UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE CHAVEZ, II,                    )   Case No. ED CV 11-312-PJW
                                      )
                  Plaintiff,          )
                                      )   MEMORANDUM OPINION AND ORDER
        v.                            )
                                      )
MICHAEL J. ASTRUE,                    )
COMMISSIONER OF THE                   )
SOCIAL SECURITY ADMINISTRATION,       )
                                      )
                  Defendant.          )
_____      )

I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when he: (1) failed to obtain the testimony of a vocational expert; (2) found that Plaintiff was not credible; and (3) failed to properly consider Plaintiff's mother's testimony. For the reasons discussed below, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

II.   SUMMARY OF PROCEEDINGS

      In December 2007, Plaintiff applied for SSI, alleging that he was disabled due to depression, anxiety, mood disorder, anger issues, and paranoia.  (Administrative Record ("AR") 81-83, 90.)  The Agency denied the application initially and on reconsideration.  (AR 37-46.)  Plaintiff then requested and was granted a hearing before an ALJ.  Plaintiff appeared with counsel and testified at the hearing on July 22, 2009.  (AR 17-34.)  The ALJ subsequently issued a decision denying benefits.  (AR 10-16.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 4-6.)  He then commenced this action.

III.   ANALYSIS

A.   The ALJ's Failure to Employ a Vocational Expert

      The ALJ concluded that Plaintiff suffered from an affective mood disorder but was capable of performing a full range of work at all levels, provided it did not involve the public and did not require "intense interpersonal interactions with supervisors or co-workers." (AR 12.)  The ALJ then consulted the Medical-Vocational Guidelines or "Grids" and concluded that Plaintiff was not disabled.  (AR 16.)  Plaintiff argues that his limitations precluded the use of the Grids. For the following reasons, the Court finds that it is not clear whether the ALJ should have used the Grids and, therefore, remand is warranted on this issue.

      The Grids are a set of rules that direct whether a claimant is or is not disabled.  20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, § 200.00.  Incorporated within the Grids is the number of unskilled jobs that exist throughout the national economy for the various functional levels of exertion, i.e., sedentary, light, medium, and heavy.  *Id.* at § 200.00(b).  An ALJ may only rely on the Grids if they

2

1  "*completely and accurately* represent a claimant's limitations," i.e.,
2  the claimant is able to perform the "*full range* of jobs in a given
3  category".  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)
4  (emphasis in original).  An ALJ may not use the Grids if a claimant
5  has a severe, non-exertional limitation that would significantly limit
6  the range of work he could perform.  *See*, *e.g.*, *Thomas v. Barnhart*,
7  278 F.3d 947, 960 (9th Cir. 2002) (holding vocational expert must be
8  consulted when the Grids do not "adequately take into account
9  claimant's abilities and limitations").

10      The question presented here is whether Plaintiff's limitation to
11  jobs involving "non-public work with no intense interpersonal
12  interactions with supervisors or co-workers" precludes the use of the
13  Grids.  The Court cannot say with certainty whether it does and,
14  therefore, remand is required.  To begin with, it is unclear what the
15  ALJ's prohibition on jobs involving "intense interpersonal
16  interactions with supervisors or co-workers" means.  The ALJ did not
17  explain it and the Court does not find that this phrase has a common
18  or generally understood meaning.  As such, the Court is unable to
19  gauge what impact if any such a restriction would have on the Grids
20  because it cannot discern the number of jobs that would be affected by
21  such a limitation.  Nor can the Court quantify the number of jobs
22  included in the Grids that qualify as non-public jobs because there is
23  no breakdown between public and non-public jobs in the Grids.  Absent
24  clarity on these issues, the Court cannot determine whether the ALJ
25  erred or not.  For that reason, remand is required to allow the ALJ to
26  further explain these limitations and the impact they do or do not
27  have on the Grids.  If they have a substantial impact on the Grids,
28  the ALJ will need to call a vocational expert.  *See Hoopai v. Astrue*,

1    499 F.3d 1071, 1076 (9th Cir. 2007) (explaining vocational expert

2    required when there are significant and sufficiently severe non-

3    exertional limitations not taken into account by the Grids).

4         The Agency disagrees.  It argues that Plaintiff's affective mood

5    disorder is akin to the claimant's depression in *Hoopai*, where the

6    Ninth Circuit upheld the use of the Grids.  (Joint Stip. at 7-8.)  The

7    Court would agree to a certain extent that there are similarities.

8    The ALJ in the case at bar found that Plaintiff had no restrictions in

9    activities of daily living, no difficulties in concentration,

10   persistence, or pace, and only slight difficulties in social

11   functioning.  (AR 14.)  In *Hoopai*, the ALJ concluded that the claimant

12   had moderate difficulties maintaining concentration, performing

13   activities within a schedule, and attending work.  *Hoopai*, 499 F.3d

14   1076-77.  But overlayed on the ALJ's findings in the case at bar is a

15   restriction to non-public work and work not involving intense

16   interpersonal relationships, both of which the Court is unable to

17   quantify in terms of their impact on the Grids.  Nor, due to the fact

18   that the impact is non-quantifiable, can the Court conclude that the

19   error was harmless.  As such, the issue is remanded for further

20   consideration.[1]

21   _____

22         [1]  The Court has not overlooked the fact that Plaintiff's
     counsel, a lawyer from the same law firm that represents Plaintiff in

23   this appeal, never objected to the ALJ not calling a vocational expert
     and never suggested at the administrative hearing that a vocational

24   expert was necessary.  (AR 33-34.)  Nor did counsel raise the issue
     when he appealed the ALJ's decision to the Appeals Council.  (AR 6.)

25   These failures approach invited error.  *See Williams v. Astrue*, 2011
     WL 1059124, at *3 (D. Or. Mar. 21, 2011) (applying invited error

26   doctrine to social security case where claimant's counsel failed to
     provide ALJ with medical records and argued on appeal that ALJ erred

27   in failing to fully develop the record because he did not obtain the

28                                                        (continued...)

B.   <u>The ALJ's Credibility Finding as to Plaintiff</u>

The ALJ found that Plaintiff was not credible.  Plaintiff argues that the ALJ erred in doing so.  For the following reasons, this argument is rejected.

Where, as here, a claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the alleged symptoms, an ALJ must provide "specific, clear and convincing reasons" to discount the claimant's testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  A fair reading of the ALJ's decision establishes that he rejected Plaintiff's testimony because it was contradicted by statements he had made to his treating doctors and because it was inconsistent with the medical record.  (AR 13.)  The ALJ also found that Plaintiff had at times exaggerated his symptoms when discussing his condition with doctors.  (AR 13.)  These are all legitimate reasons for questioning a claimant's credibility.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding lack of objective medical evidence to support claims is a factor ALJ can consider in evaluating claimant's testimony); *Batson v. Comm'r*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (holding "contradictions from [the claimant's] own testimony and the lack of objective medical evidence supporting [his] claims," among other things, justified the ALJ's adverse credibility determination).  And they are supported by the record.  Plaintiff testified at the administrative hearing that he was suicidal and afraid he might hurt someone.  (AR 20-21, 23, 26.)  Yet, when asked these same questions by treating doctors over the years, he

---

[1]  (...continued)
records).  Counsel is admonished to voice his concerns at the administrative level so that needless appeals can be avoided.

consistently denied that this was the case.[2]    (AR 211-16, 228-48.)    In addition, generally speaking, the doctors who treated him described his impairments as mild.  (AR 213.)  This is inconsistent with the severe ailments Plaintiff described during the hearing.  (AR 20-29.)  Further, though Plaintiff testified that his medications caused dizziness, drowsiness, and confusion, he consistently reported to his doctors that he did not suffer side effects from his medications.  (AR 27, 214-16, 234-48.)  Finally, the examining psychologist found that Plaintiff was not credible and that he had rehearsed his interview with her in an effort to persuade her that he was impaired.  (AR 187-94.)  These reasons in combination are adequate to support the ALJ's credibility finding.  For that reason, it will not be disturbed.

C.    Plaintiff's Mother's Testimony

Prior to the administrative hearing, Plaintiff's mother submitted questionnaires in which she set forth that Plaintiff suffered from severe emotional/psychological problems that interfered with his ability to function.  (AR 114-21, 169-76.)  She testified similarly at the administrative hearing.  (AR 29-32.)  In the mother's view, most of Plaintiff's problems were the result of his medications.  (AR 29-32.)  The ALJ rejected this testimony on the ground that the medical records did not support her belief that Plaintiff's problems were caused by his medications.  (AR 14.)  He further questioned her testimony because, as Plaintiff's mother, she presumably wanted to help him and, in doing so, would be helping herself since she was supporting him.  (AR 14.)  Plaintiff contends that the ALJ erred in

---

[2]  Plaintiff reported suicide ideation to his treating doctor on two occasions between August 2007 and April 2009.  (AR 235, 237.)

rejecting the mother's testimony for these reasons.  As explained below, this issue does not warrant remand.

In order to reject the mother's testimony, the ALJ was only required to set forth reasons that were germane to her testimony.  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The inconsistency between the mother's testimony and the medical record is a germane reason for discounting her testimony, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*), and is supported by substantial evidence in the record.  Plaintiff's doctors did not attribute his condition or the manifestations of his condition to his medications.  In fact, they consistently reported that he did not suffer any side effects from his medications, as did Plaintiff.  (AR 210-16, 227-48.)  Thus, this was a valid reason for rejecting the mother's testimony.

The ALJ's second reason for questioning the mother's testimony-- that, as his mother, she was likely motivated to help him (AR 14)--is a little trickier.  Arguably, this is germane to her credibility. *See, e.g., Romero v. Tansy*, 46 F.3d 1024, 1030 (10th Cir. 1995) (concluding alibi testimony by defendant's family members is of significantly less value than that of an objective witness); *and see* Ninth Circuit Model Civil Jury Instruction No. 1.11, Credibility of Witnesses ("In considering the testimony of any witness, you may take into account:  .  .  .  (4)  .  .  .  any bias or prejudice .  .  .  .").  And, generally speaking, ALJs are entitled to employ ordinary credibility evaluation techniques in evaluating a witness's testimony.  *Smolen*, 80 F.3d at 1284.  But, at least in this circuit, ALJs are not allowed to consider the fact that the witness is the claimant's mother in assessing her credibility.  *See Regennitter v. Comm'r of Social Sec.*,

166 F.3d 1294, 1298 (9th Cir. 1999); and *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); *but cf. Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding ALJ's rejection of claimant's former girlfriend's testimony based, in part, on fact she had a close relationship with claimant and was possibly influenced by her desire to help him).  Thus, the ALJ erred when he took into account any real or perceived bias stemming from the relationship between mother and son in analyzing the mother's testimony.

The ALJ also, however, considered the fact that Plaintiff's mother would benefit financially if Plaintiff received benefits because Plaintiff lived with her and she supported him.  (AR 14.) This *may be* a proper reason for questioning a witness's credibility. *See, e.g., Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009) ("[E]vidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony.").  The Court need not resolve the issue here, however, since the ALJ's first reason--that the mother's testimony was inconsistent with the medical record--is enough to support his finding that she was not credible.  *See, e.g., Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding reviewing court must determine whether remaining valid reason(s) for ALJ's questioning claimant's credibility amounts to substantial evidence).  For this reason, the Court finds that the ALJ did not err in rejecting the mother's testimony.

1                  IV.   CONCLUSION

2       For the reasons set forth above, the Agency's decision is

3  reversed and the case is remanded for further proceedings consistent

4  with this opinion.[3]

5       IT IS SO ORDERED.

6       DATED: February 6, 2012.

7

8                              *Patrick J. Walsh*
                          PATRICK J. WALSH

9                            UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  S:\PJW\Cases-Soc Sec\CHAVEZ, 312\MEMO OPINION AND ORDER.wpd

25

26  _____

27      [3]   The Court has considered Plaintiff's request that the case be
remanded for an award of benefits.  That request is denied.  It is not

28  clear that Plaintiff is entitled to benefits and further proceedings
are necessary to resolve that issue.